UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DOUGLAS D. SMITH,

    Plaintiff,

    v.                                            CAUSE NO. 3:23-CV-216-JD-JEM

NANCY MARTHAKIS, et al.,

    Defendants.

OPINION AND ORDER

    Douglas D. Smith, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) As required by 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Smith is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

    Mr. Smith is an inmate at Indiana State Prison ("ISP"). He alleges that in December 2022, he was transferred to ISP from Westville Correctional Facility ("Westville"). While at Westville, he was treated for a condition called "Reflex

Sympathetic Dystrophy" or "RSD," which he claims was caused by a surgery he had on his left bicep some years earlier.[1] According to Mr. Smith, there is no cure for RSD and the only treatment is medication to manage the pain. He claims that at Westville he was prescribed the pain medication Gabapentin to manage his pain. When he arrived at ISP, he had an ongoing prescription for Gabapentin. A few days after his arrival, he inquired at the medication window whether he would be getting his Gabapentin. Nurse Brenda (last name unknown) allegedly told him, "You can't have Gabapentin here." He asked her to check her computer, which he said would show he should be receiving the medication. She said she would check with the doctor and to return the following day. He returned the following day, but she told him the same thing again, to return the next day. This went on for a few days, until Mr. Smith saw another nurse at the medication window. He started explaining the situation to her, at which point Nurse Brenda arrived. She allegedly began laughing and said, "I told you you couldn't have Gabapentin here at this prison, you've been [discontinued] by your new provider."

A few days later, he saw his new treating physician, Dr. Nancy Marthakis, who told him that she had not discontinued the Gabapentin and was unsure why Nurse Brenda gave him that information. However, Dr. Marthakis also told him that

---

[1] Reflex sympathetic dystrophy, also called "complex regional pain syndrome," is described as "chronic neuropathic pain characterized by persistent burning or aching pain plus certain abnormalities that occur in the same area as the pain." MERCK MANUAL, *Reflex Sympathetic Dystrophy*, avail. at https://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/pain/complex-regional-pain-syndrome?query=reflex%20sympathetic%20dystrophy. It can result "from injury to tissues other than nerve tissue, as when bone and soft tissues (such as ligaments and tendons) are crushed in an accident," and "commonly occurs after an injured limb is treated with a cast or splint to immobilize it." *Id*.

2

Gabapentin was generally not prescribed at ISP and that she intended to wean him off this medication over a period of 30 days. She also allegedly told him she would "talk with her bosses at Centurion Health" about another treatment option. He was then weaned off the Gabapentin (a few days early, by his account), but Dr. Marthakis allegedly did not prescribe any other medication to address his pain. He later found out that she never talked to anyone within Centurion about other treatment options either.

He filed an informal complaint about not being given Gabapentin, which was reviewed by Health Services Administrator Sherri Fritter, who is also a nurse. She allegedly responded that medications were reviewed by a "team" of providers, and that the Gabapentin had only been approved for 30 days. He then filed a formal grievance about being denied Gabapentin. In the interim, he was seen by an outside provider for a separate medical condition related to his spine and leg. That doctor suggested that he receive the medication Cymbalta to manage his pain, although Mr. Smith claims the doctor really wanted to prescribe Gabapentin but Mr. Smith told him the prison would not let him have it. Dr. Marthakis subsequently approved the Cymbalta and he began receiving it. However, he believes this medication is contraindicated because of another medical condition he has called "Narrow Angle Glaucoma." He claims people with this condition should not take Cymbalta, although the basis for his belief is unclear from the complaint.

In January 2023, Ms. Fritter responded to his formal grievance. She allegedly stated that testing of his "left leg" was "normal" and that Dr. Marthakis had decided to wean him off the Gabapentin. Mr. Smith claims Ms. Fritter was lying, that the left leg

3

issue was an entirely separate matter, and that he needed Gabapentin to address the pain in his arm caused by the RSD. He appealed her response to Warden Ron Neal, and then the Indiana Department of Correction ("IDOC") grievance manager, but both of them denied his appeals.

Mr. Smith then began efforts to learn the identities of the "team" of providers referenced in Ms. Fritter's response to his informal complaint. After informal inquiries were unsuccessful, he filed a grievance with Grievance Specialist Joshua Wallen asking for the names of these individuals. Mr. Wallen allegedly responded: "Per RN Fritter, there is no single person who makes these decisions, and there is nothing forcing me to give you these names even if I knew them." He believes Mr. Wallen violated his constitutional rights by "twisting policy" and "not do[ing] his job," and that Ms. Fritter violated his constitutional rights by "mixing issues to confuse my response with total lies" when responding to his complaint and grievance.

In mid-February 2023, he again made written inquiries about the Gabapentin, and in response was scheduled to see Nurse Practitioner Kim Pflughaupt. At their visit, she reviewed his records and noted that he was receiving Cymbalta. He told her that drug was for his spinal issue, not the RSD, and that he wanted the Gabapentin. She responded that Cymbalta is an alternative treatment for RSD. He told her he did not think he should be taking Cymbalta because of his glaucoma. He claims she saw in his records that he had glaucoma but did not discontinue the Cymbalta. After more discussion she allegedly became angry with Mr. Smith, asking him, "Do you even know

what RSD is or does?" She then allegedly told him they were "done" and to "get out of her office."

In late February 2023, he saw Nurse Practitioner Karen Fagan for his spinal issues. Even though he was there for a different medical concern, he decided to bring up the issue of the Gabapentin for his RSD. She allegedly told him, "You can't have the Gabapentin here at this prison," and noted that he was receiving Cymbalta in part to address the pain from his RSD. He again brought up his glaucoma and his belief he should not be taking Cymbalta. She looked over his medical records and asked him if he was being treated for glaucoma, to which he responded that he was not. She then declined to discontinue the Cymbalta.

Based on these events, he sues Nurse Brenda, Dr. Marthakis, Warden Neal, Ms. Fritter, NP Pflughaupt, NP Fagan, and Mr. Wallen. He also names as defendants "John Doe" and "Jane Doe," the "panel members of 'assumed' Centurion Health Company," who he claims "took Dr. Marthakis's word" for whether he needed Gabapentin. In his view, "If they were truly doing their job, they would have at least ask[ed] some questions of Dr. Marthakis." He seeks monetary damages, proper treatment for pain management, and other relief.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Smith v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013

5

(7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

"[M]ere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). By the same token, ignoring an inmate's complaints of pain or delaying in providing necessary treatment can amount to deliberate indifference, particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

The mere fact that he received Gabapentin at one prison and not at ISP does not state a deliberate indifference claim, because "there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett*, 937 F.3d at 1024. Nevertheless, the complaint can be read to allege that he has not been given proper pain medication while at ISP to manage his condition. Giving Mr. Smith the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Nurse Brenda, Dr. Marthakis, NP

6

Plfughaupt, and NP Fagan. He alleges that Nurse Brenda laughed at him, gave him misinformation, and failed to promptly ensure that he saw a doctor after his arrival at ISP, during which time he was experiencing pain from the RSD. He claims Dr. Marthakis weaned him off Gabapentin and did not give him anything else for pain for some months, during which time he was experiencing pain. He also claims she never followed up with her superiors about alternative treatments. Although he was ultimately given another medication for pain after consultation with an outside doctor about another medical condition, he claims he should not be taking this medication because of his glaucoma, and that the medical providers he has seen are aware of this. His complaint can be read to allege that the Cymbalta does not work as well as the Gabapentin and that he is still experiencing pain in his arm, but these defendants have failed to adequately treat him. He will be permitted to proceed against these defendants on a claim for damages.

As for Ms. Fritter, it is evident from his allegations that she did not make any of the actual decisions related to his care; she merely responded to his written complaint and grievance. He believes she "lied" and wrote down the wrong information in her responses, but this does not plausibly allege that she denied him needed medical care under the Eighth Amendment, or that she violated some other constitutional right. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635

F.3d 950, 953-54 (7th Cir. 2011). Likewise, his allegations that Mr. Wallen wrongly denied his grievance and did not do his job properly does not state a constitutional claim.[2] *Id.; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). These defendants will be dismissed.

As to the Warden, Mr. Smith seeks to hold him liable as "the one running this prison." (ECF 1 at 22.) However, this is not a viable basis for imposing liability under 42 U.S.C. § 1983. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). He mentions having filed a grievance appeal with the Warden complaining that he wanted Gabapentin, which the Warden denied. This cannot form the basis for liability under 42 U.S.C. § 1983. As the Seventh Circuit has explained:

> Public officials do not have a free-floating obligation to put things to rights . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

*Burks*, 555 F.3d at 595.

---

[2] He appears to claim that Mr. Wallen thwarted his efforts to exhaust the grievance process. If exhaustion becomes an issue at a later stage, Mr. Smith is free to argue that he was prevented from exhausting and thus had no remedies that were "available." *See Woodford v. Ngo*, 548 U.S. 81 (2006). However, his allegations do not give rise to an independent constitution claim. *Daniel*, 833 F.3d at 736.

8

Mr. Smith does not plausibly allege that Warden Neal was personally involved in deciding what medications Mr. Smith should be given. It is also evident from Mr. Smith's allegations that during the time he appealed to the Warden, he was being seen by medical staff, including at least one outside provider, and was being prescribed a different medication for pain. Although he disagrees with the decisions of his providers, as a non-medical staff member, the Warden was permitted to defer to them about what medication should be prescribed. *Burks*, 555 F.3d at 595. Mr. Smith will not be permitted to proceed on a claim for damages against the Warden.

Nevertheless, the complaint can be read to allege that Mr. Smith has an ongoing need for medication to adequately manage the pain from his RSD. He will be permitted to proceed on a claim against the Warden in his official capacity for injunctive relief to obtain constitutionally adequate medical treatment. *See Daniel*, 833 F.3d at 737; *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Finally, he sues "John Doe" and "Jane Doe," the "team members" within Centurion who allegedly reviewed the medical decisions made by Dr. Marthakis. His allegations against these defendants are somewhat confusing, but there is no indication from his allegations that officials within Centurion made the decision to discontinue his Gabapentin; instead, he attributes that entirely to Dr. Marthakis. Indeed, he points out that officials within Centurion previously approved his use of Gabapentin at another prison. He further claims that Dr. Marthakis never actually consulted with anyone at Centurion about other treatment options. He believes these unnamed individuals should have "done their jobs" better and asked more questions of Dr. Marthakis or

9

otherwise intervened in her care decisions, but such allegations do not give rise to a plausible deliberate indifference claim. *Burks*, 555 F.3d at 595; *see also Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020) ("[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation).

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Nurse Brenda (last name unknown), Dr. Nancy Marthakis, Nurse Practitioner Kim Pflughaupt, and Nurse Practitioner Karen Fagan in their individual capacities for money damages for denying him medication to adequately manage his pain from Reflex Sympathetic Dystrophy in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Warden Ron Neal in his official capacity to obtain constitutionally adequate medical care to address the pain from Reflex Sympathetic Dystrophy;

(3) DISMISSES all other claims;

(4) DISMISSES Sherri Fritter, Joshua Wallen, John Doe, and Jane Doe as defendants;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Brenda (last name unknown), Dr. Nancy Marthakis, Nurse Practitioner Kim Pflughaupt, and Nurse Practitioner Karen Fagan at Centurion Health and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

10

(6) ORDERS Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(7) ORDERS Nurse Brenda (last name unknown), Dr. Nancy Marthakis, Nurse Practitioner Kim Pflughaupt, Nurse Practitioner Karen Fagan, and Warden Ron Neal to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 30, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT