UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DOUGLAS D. SMITH, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-216-JD |
| NANCY MARTHAKIS, et al., | |
| Defendants. | |

OPINION AND ORDER

Douglas D. Smith, a prisoner without a lawyer, is proceeding in this case against Dr. Nancy Marthakis and Nurse Brenda Suber in their individual capacities for money damages for denying him medication to adequately manage his pain from Reflex Sympathetic Dystrophy ("RSD") in violation of the Eighth Amendment. ECF 6 at 10. On October 31, 2024, the defendants filed a motion for summary judgment. ECF 77. With the motion, the defendants provided Smith the notice required by N.D. Ind. L.R. 56-1(f). ECF 81. Attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a Response to Statement of Material Facts, which includes a citation to evidence supporting each dispute of fact. This deadline passed over nine months ago, but Smith still has not responded. Therefore, the court will now rule on the defendants' summary judgment motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'"

*Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

3

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

The defendants provide Smith's medical records, an affidavit from Dr. Marthakis, a medical study entitled "Complex regional pain syndrome in adults: Treatment, prognosis, and prevention," and a "Drug Evaluation" for gabapentin from the Drug Enforcement Administration's Diversion Control Division, which show the following facts:[1] On May 2, 2018, while Smith was incarcerated at Pendleton Correctional Facility, he underwent surgical repair of his left shoulder. ECF 78-1 at 3-6. Following the surgery, Smith saw Dr. Jason Watters, an orthopedic surgeon, who authored a letter noting his medical opinion that Smith needed gabapentin for treatment of "suspected" RSD. *Id.* at 7. RSD is a "relatively mysterious chronic pain disorder" that typically affects a single limb and is characterized by pain that is

---

[1] Because Smith has not responded to the defendants' summary judgment motion, the court accepts these facts as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

4

disproportionate to the usual course of any trauma. ECF 78-3 at 1. RSD can be treated with a rehabilitation regimen and pain medications to reduce pain, including nonsteroidal anti-inflammatory drugs ("NSAID") such as ibuprofen or adjunctive anticonvulsant medications such as gabapentin. *Id.* at 5-6.

Gabapentin has FDA approval for only two uses: (1) management of postherpetic neuralgia in adults; and (2) as an adjunctive therapy in the treatment of certain seizures. ECF 78-4; ECF 78-5 at 2. It is also used for off-label therapies such as the treatment of neuropathic pain. ECF 78-5 at 2. Gabapentin is "unproven" in treating conditions like RSD, as some experts believe it can be useful for pain management while others believe it has only a marginal and clinically unimportant benefit. ECF 78-3 at 6-7. Moreover, there is growing awareness of the potential for misuse of the drug. *Id.*; ECF 78-4.

Gabapentin is associated with sedative and psychedelic effects and is classified as a controlled substance in Indiana. ECF 78-4; Ind. Code § 25-26-24-2.5. Therefore, gabapentin is problematic in a correctional setting because it has the potential for misuse and diversion. ECF 78-5 at 2. Specifically, inmates often divert gabapentin to other inmates for secondary gain, are extorted by other inmates for their gabapentin prescriptions, or store up doses of gabapentin to take the doses all at the same time to get high off the medication. *Id.* As a result, gabapentin is considered a "last resort" medication that should only be prescribed when everything else has been tried and failed. *Id.* at 3.

On November 9, 2018, Smith was transferred from Pendleton to Westville Correctional Facility ("WCF"). ECF 78-1 at 20. While at WCF, Smith was referred for

5

substance abuse treatment due to his history of substance use, including a documented history of Suboxone and methamphetamine use. *Id.* at 26, 37, 39. In January 2021, Smith's prescription for gabapentin was discontinued by Dr. Andrew Liaw because it appeared he was not taking the medication as directed and the drug was heavily trafficked in the prison. *Id.* at 25. In October 2021, Dr. James Jackson issued an order to restart Smith on gabapentin due to his continued complaints of pain. ECF 78-2 at 54.

On December 12, 2022, Smith was transferred from WCF to Indiana State Prison ("ISP"). ECF 78-1 at 42, 46; ECF 78-5 at 3. At the time of his transfer, Smith had an active prescription for gabapentin for left shoulder pain. ECF 78-1 at 42; ECF 78-5 at 3-4. Dr. Marthakis reviewed Smith's medical records, noted he had a history of substance abuse, and determined gabapentin was not a safe option for him. ECF 78-5 at 3-4.

On December 21, 2022, Dr. Marthakis discussed her concerns with Smith related to his gabapentin prescription and discussed potential alternatives including Cymbalta and Pamelor. ECF 78-1 at 52-55; ECF 78-5 at 4-5. Smith stated he had tried both medications before and they were not effective, but his medical records did not demonstrate any prior treatment with those medications. *Id.* Dr. Marthakis also noted it appeared Smith had not been purchasing NSAIDs as recommended by his orthopedist. *Id.* Based on the available information, Dr. Marthakis was not satisfied that less risky pain interventions had been tried and proven ineffective. *Id.* As a result, she entered an order to wean Smith off gabapentin, continued his prescription for Extra Strength Tylenol, and provided him a limited supply of ibuprofen. *Id*. When Smith presented to

6

medication pass, Nursing Assistant Suber told him he no longer had an active prescription for gabapentin. ECF 68 at 4.

On January 25, 2023, once Smith had been weaned off gabapentin, Dr. Marthakis ordered him Cymbalta with a start date of February 1 and a stop date of February 23, 2023. ECF 78-5 at 5. Throughout February 2023, Smith refused his prescribed Cymbalta approximately seven times and was a no-show for his medication on at least three occasions. ECF 78-2 at 51-52.[2] He also refused to have his labs drawn due to his frustration with Dr. Marthakis. ECF 78-1 at 64. As a result, his prescription for Cymbalta was not reordered after February 23, 2023. ECF 78-2 at 49-51. He continued to have active prescriptions for Extra Strength Tylenol and aspirin. *Id.*

On February 21, 2023, Smith was seen by his orthopedic surgeon, who recommended he continue his physical therapy, receive "ibuprofen, Tylenol and ice," and follow up in six weeks. ECF 78-2 at 1.

On March 10, 2023, Smith saw Nurse Kimberly Pflughaupt and discussed his shoulder pain. ECF 78-2 at 2-3. Nurse Pflughaupt attempted to discuss with Smith the need to perform further assessment before he could receive an EMG on his shoulder, but Smith became argumentative and she had to end the appointment. *Id.* Smith continued to have active prescriptions for Extra Strength Tylenol and aspirin. *Id.* at 3.

On March 16, 2023, Smith filed this lawsuit, alleging in his complaint that the defendants violated his Eighth Amendment rights by weaning him off his gabapentin

---

[2] The circled entries on Smith's Medication Administration Record indicates he refused his Cymbalta (listed as "duloxetine") on at least seven occasions over a twenty-one day period. ECF 78-2 at 51; ECF 80 at 12 n.1.

7

without giving him any alternative pain medications and eventually prescribing Cymbalta which was ineffective. ECF 1. The defendants provide evidence regarding Smith's medical care after he filed this lawsuit, which shows generally that Smith continued receiving physical therapy and had active prescriptions for Extra Strength Tylenol and ibuprofen until he was transferred to a different prison in November 2023.

Dr. Marthakis argues summary judgment is warranted in her favor because she exercised her professional judgment to discontinue Smith's gabapentin prescription because (1) the gabapentin prescription raised safety concerns due to Smith's history of substance abuse, and (2) alternative pain medications had not been tried and proven ineffective, as Smith had not regularly taken his other prescribed and recommended medications including Cymbalta and NSAIDs. ECF 79 at 19-23. Dr. Marthakis attests that if the NSAIDs and Cymbalta had proven to be ineffective, she would have considered other treatment options. ECF 78-5 at 5. However, during Smith's short stay at ISP, there was insufficient medical evidence that those medications were used consistently and were ineffective. *Id.* Because Smith refused to consistently take his prescribed and recommended alternative pain medications at ISP, the effectiveness of those medications could not be accurately determined. *Id.* at 6.

Here, the undisputed evidence in the record shows Dr. Marthakis' decision to discontinue Smith's gabapentin prescription and try alternative pain medications was a valid exercise of her professional judgment. Specifically, it's undisputed Dr. Marthakis determined to discontinue Smith's gabapentin prescription due to valid safety concerns related to his documented history of substance abuse and prescribed him Cymbalta,

8

Extra Strength Tylenol, ibuprofen, and aspirin instead. There's no evidence by which a reasonable jury could conclude Dr. Marthakis' decision to try alternative pain medications was "plainly inappropriate," as it's undisputed Smith refused to take his medications as prescribed and the medications were therefore never proven to be ineffective. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (an inmate cannot be permitted to "engineer" a constitutional violation); *Cambronero v. Meli*, No. 22-2103, 2023 WL 4946724 (7th Cir. Aug. 3, 2023) (doctor not deliberately indifferent for exercising her judgment to discontinue prisoner's gabapentin prescription where evidence showed the prisoner had other pain medications and had drunk alcohol in prison). And Dr. Marthakis provides medical documentation showing her decision to try alternative treatment options was in line with accepted professional judgment. *See* ECF 78-3; ECF 78-4. Thus, the record reflects only that Smith disagreed with Dr. Marthakis' decision to discontinue his gabapentin and try other medications, which is insufficient to show an Eighth Amendment violation. *See Cambronero*, 2023 WL 4946724; *Ciarpaglini*, 352 F.3d at 331. Summary judgment is therefore warranted in favor of Dr. Marthakis.

Nursing Assistant Suber argues summary judgment is warranted in her favor because she followed Dr. Marthakis' orders regarding Smith's medications and had no authority to administer Smith any medication he had not been prescribed. ECF 79 at 23-24. She provides a sworn statement that she "defers to the Indiana State Prison medical providers for medication orders/prescriptions," and that she only declined to give

9

Smith gabapentin during medication pass because he no longer had an active prescription for the medication. ECF 68 at 4-5.

Here, the record shows Nursing Assistant Suber's only involvement in Smith's treatment was to (1) inform Smith about Dr. Marthakis' decision to discontinue his gabapentin prescription and (2) provide Smith the medications that were prescribed for him by Dr. Marthakis. It is undisputed Smith's gabapentin prescription was discontinued by Dr. Marthakis, not by Nursing Assistant Suber, and no reasonable jury could conclude Nursing Assistant Suber violated Smith's Eighth Amendment rights by refusing to provide him a medication he was not actively prescribed. *See Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 (7th Cir. 2022) ("As a general matter, a nurse can, and indeed must, defer to a treating physician's instructions"); *Brown v. Osmundson*, 38 F.4th 545, 553 (7th Cir. 2022) (no liability for prison nurse who "performed her assigned duties."). Because Nursing Assistant Suber's only involvement in Smith's treatment was to provide him the medications prescribed by Dr. Marthakis and to inform him of Dr. Marthakis' treatment decisions, no reasonable jury could conclude she violated Smith's Eighth Amendment rights. Summary judgment is therefore warranted in her favor.

Accordingly, there's no evidence in the record by which a reasonable jury could conclude that either defendant violated any standard of care or provided Smith any treatment that was "plainly inappropriate." Summary judgment is therefore warranted in favor of both defendants.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 77); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Douglas D. Smith and to close this case.

SO ORDERED on September 9, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT